# EXHIBIT A

## CCAA ORDER

CANADA

PROVINCE OF QUEBEC
DISTRICT OF **MONTRÉAL**

File: No: 500-11-057570-190

**S U P E R I O R   C O U R T**
(Commercial Division)

**Montreal, December 12, 2019**

**PRESIDING:   THE   HON.   MARIE-ANNE
PAQUETTE, J.S.C.**

*IN THE MATTER OF THE COMPANIES'
CREDITORS ARRANGEMENT ACT, R.S.C.
1985, c. C-36, AS AMENDED:*

**9348069 CANADA INC.**

-and-

**4295862 CANADA INC.**

-and-

**MOTOVAN CORPORATION**

Petitioners

-and-

**MONCY HOLDING COMPANY INC.**

-and-

**MONCY  FINANCIAL  SERVICES  COMPANY
INC.**

-and-

**NICHOLS MOTORCYCLE SUPPLY INC.**

-and-

**MONCY LLC**

-and-

**MOTORCYCLE   TIRES   &   ACCESSORIES
LLC**

COPIE CERTIFIÉE CONFORME AU
DOCUMENT DÉTENU PAR LA COUR

*Darlene Jérôme*

PERSONNE DÉSIGNÉE PAR LE GREFFIER
EN VERTU DE 67 C.P.C.

- 2 -

Impleaded Parties

(Petitioners and Impleaded Parties are collectively hereafter referred to as the « **CCAA Parties** »)

-and-

**BANK OF MONTREAL**

-and-

**INVESTISSEMENT QUÉBEC**

-and-

**EXPORT DEVELOPMENT CANADA**

-and-

<u>**BDC CAPITAL INC.**</u>

Secured Creditors

-and-

**KPMG INC.**

Monitor

## <u>AMENDED AND RESTATED</u> INITIAL ORDER

**UPON READING** *the Motion for (i) the Issuance of an Initial Order, (ii) the Granting of an Administration Charge, & for (iii) the Granting of a Directors and Officers Charge,* pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, C-36 (as amended the "**CCAA**") and having examined the exhibits and the affidavit of James Paladino filed in support thereof (the "**Petition**");

**GIVEN** the consent of KPMG Inc. to act as monitor (the "**Monitor**"), relying upon the submissions of counsel and being advised that the interested parties, including secured

- 3 -

creditors who are likely to be affected by the charges created herein, were given prior notice of the presentation of the Petition;

**GIVEN** the initial order issued by this Court on December 2, 2019 (the "**Preliminary Initial Order**");

**GIVEN** the provisions of the CCAA;

**FOR THESE REASONS, THE COURT HEREBY**:

1.   **GRANTS** the Petition.

2.   **ISSUES** an order pursuant to the CCAA (the "**Order**"), divided under the following headings:

    A-   Service
    B-   Application of the CCAA
    C-   Effective Time
    D-   Plan of Arrangement
    E-   Stay of Proceedings against the CCAA Parties and the Property
    F-   Stay of Proceedings against the Directors and Officers
    G-   Possession of Property and Operations
    H-   No Exercise of Rights or Remedies;
    I-   No Interference with Rights
    J-   Continuation of Services
    K-   Non-Derogation of Rights
    L-   Directors' and Officers' Indemnification and Charge
    M-   Restructuring
    N-   Powers of the Monitor
    O-   Priorities and General Provisions Relating to the CCAA Charges
    P-   General

- 4 -

**A-    Service**

3.    **DECLARES** that sufficient prior notice of the presentation of this Petition has been given by the CCAA Parties to interested parties, including the secured creditors who are likely to be affected by the charges created herein.

**B-    Application of the CCAA**

4.    **DECLARES** that the CCAA Parties are companies to which the CCAA applies.

5.    **ORDERS** that the consolidation of these CCAA proceedings in respect of the CCAA Parties shall be for administrative purposes only and shall not effect a consolidation of the assets and property of each of the CCAA Parties including, without limitation, for the puposes of any Plan or Plans that may be hereafter proposed.

**C-    Effective time**

6.    **DECLARES** that this Order and all of its provisions are effective as of 12:01 a.m. Montreal time, province of Quebec, on the date of the Preliminary Initial Order;

**D-    Plan of Arrangement**

7.    **DECLARES** that the CCAA Parties shall have the authority to file with this Court and to submit to its creditors one or more plans of compromise or arrangement (collectively, the "**Plan**") in accordance with the CCAA.

**E-    Stay of Proceedings against the CCAA Parties and the Property**

8.    **ORDERS** that, until and including January 31, 2020 at 5 p.m. or such later date and time as the Court may order from time to time (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**") shall be commenced or continued against or in respect of the CCAA Parties, or affecting their respective business operations and activities (the "**Business**") or the Property (as defined herein below), including as provided in paragraph 12 hereinbelow except

- 5 -

with leave of this Court. Any and all Proceedings currently under way against or in respect of the CCAA Parties or affecting the Business or the Property are hereby stayed and suspended pending further order of this Court, the whole subject to subsection 11.1 CCAA.

9.    **ORDERS** that the rights of Her Majesty in right of Canada and Her Majesty in right of a Province are suspended in accordance with the terms and conditions of Subsection 11.09 CCAA.

### F-    Stay of Proceedings against the Directors and Officers

10.    **ORDERS** that during the Stay Period and except as permitted under subsection 11.03(2) of the CCAA, no Proceeding may be commenced, or continued against any former, present or future director or officer of the CCAA Parties nor against any person deemed to be a director or an officer of the CCAA Parties under subsection 11.03(3) CCAA (each, a "**Director**", and collectively the "**Directors**") in respect of any claim against such Director which arose prior to the Effective Time and which relates to any obligation of the CCAA Parties where it is alleged that any of the Directors is under any law liable in such capacity for the payment of such obligation.

### G-    Possession of Property and Operations

11.    **ORDERS** that the CCAA Parties shall remain in possession and control of their present and future assets, rights, undertakings and properties of every nature and kind whatsoever, and wherever situated, including all proceeds thereof (collectively the "**Property**"), the whole in accordance with the terms and conditions of this order including, but not limited, to paragraph 23 hereof.

### H-    No Exercise of Rights or Remedies

12.    **ORDERS** that during the Stay Period, and subject to, *inter alia*, subsection 11.1 CCAA, all rights and remedies of any individual, natural person, firm, corporation, partnership, limited liability company, trust, joint venture, association, organization,

- 6 -

governmental body or agency, or any other entity (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the CCAA Parties or affecting the Business, the Property or any part thereof, are hereby stayed and suspended except with leave of this Court.

13. **DECLARES** that, to the extent any rights, obligations, or prescription, time or limitation periods, including, without limitation, to file grievances, relating to the CCAA Parties or any of the Property or the Business may expire (other than pursuant to the terms of any contracts, agreements or arrangements of any nature whatsoever), the term of such rights, obligations, or prescription, time or limitation periods shall hereby be deemed to be extended by a period equal to the Stay Period. Without limitation to the foregoing, in the event that the CCAA Parties become bankrupt or a receiver as defined in subsection 243(2) of the *Bankruptcy and Insolvency Act* (Canada) (the "**BIA**") is appointed in respect of the CCAA Parties, the period between the date of the Order and the day on which the Stay Period ends shall not be calculated in respect of the CCAA Parties in determining the 30 day periods referred to in Sections 81.1 and 81.2 of the BIA.

I- **No Interference with Rights**

14. **ORDERS** that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, resiliate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the CCAA Parties, except with the written consent of the CCAA Parties and the Monitor, or with leave of this Court.

J- **Continuation of Services**

15. **ORDERS** that during the Stay Period and subject to paragraph 17 hereof and subsection 11.01 CCAA, all Persons having verbal or written agreements with the CCAA Parties or statutory or regulatory mandates for the supply of goods or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance,

transportation, utility or other goods or services made available to the CCAA Parties, are hereby restrained until further order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the CCAA Parties, and that the CCAA Parties shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses, domain names or other services, provided in each case that the normal prices or charges for all such goods or services received after the date of the Order are paid by the CCAA Parties, without having to provide any security deposit or any other security, in accordance with normal payment practices of the CCAA Parties or such other practices as may be agreed upon by the supplier or service provider and the CCAA Parties, with the consent of the Monitor, or as may be ordered by this Court.

16. **ORDERS** that, notwithstanding anything else contained herein and subject to subsection 11.01 CCAA, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided to the CCAA Parties on or after the date of this Order, nor shall any Person be under any obligation on or after the date of the Order to make further advance of money or otherwise extend any credit to the CCAA Parties.

17. **ORDERS** that, without limiting the generality of the foregoing and subject to Section 21 of the CCAA, if applicable, cash or cash equivalents placed on deposit by the CCAA Parties with any Person during the Stay Period, whether in an operating account or otherwise for itself or for another entity, shall not be applied by such Person in reduction or repayment of amounts owing to such Person as of the date of the Order or due on or before the expiry of the Stay Period or in satisfaction of any interest or charges accruing in respect thereof; however, this provision shall not prevent any financial institution from: (i) reimbursing itself for the amount of any cheques drawn by CCAA Parties and properly honoured by such institution, or (ii) holding the amount of any cheques or other instruments deposited into the CCAA Parties' account until those cheques or other instruments have been honoured by the financial institution on which they have been drawn.

- 8 -

18.  **ORDERS** that notwithstanding paragraph 17 of this Order, nothing in this Order shall modify or interfere with the bank account agreements entered into between the Bank of Montreal and the CCAA Parties and the accounts subject thereto, including any existing blocked accounts agreements and deposit control accounts agreements, nor will this order prevent the exercise of, limit or prohibit the enforcement of, or restrict the rights of Bank of Montreal under such agreements.

### K-    Non-Derogation of Rights

19.  **ORDERS** that, notwithstanding the foregoing, any Person who provided any kind of letter of credit, guarantee or bond (the "**Issuing Party**") at the request of the CCAA Parties shall be required to continue honouring any and all such letters, guarantees and bonds, issued on or before the date of the Order, provided that all conditions under such letters, guarantees and bonds are met save and except for defaults resulting from this Order; however, the Issuing Party shall be entitled, where applicable, to retain the bills of lading or shipping or other documents relating thereto until paid.

### L-    Directors' and Officers' Indemnification and Charge

20.  **ORDERS** that the CCAA Parties shall indemnify their Directors from all claims relating to any obligations or liabilities they may incur and which have accrued as of December 2, 2019, by reason of or in relation to their respective capacities as directors or officers of the CCAA Parties after the Effective Time, except where such obligations or liabilities were incurred as a result of such directors' or officers' gross negligence, wilful misconduct or gross or intentional fault as further detailed under Section 11.51 CCAA.

21.  **ORDERS** that the Directors of the CCAA Parties shall be entitled to the benefit of and are hereby granted a charge and security in the Property to the extent of the aggregate amount of **$723,000.00** (the "**D&O Charge**"), as security for the indemnity provided in paragraph 20 of this Order as it relates to obligations and liabilities that

- 9 -

the Directors may incur in such capacity after the Effective Time. The D&O Charge shall have the priority set out in paragraphs 39 and following of this Order.

22.   **ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the D&O Charge, and (b) the Directors shall only be entitled to the benefit of the D&O Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage in insufficient to pay amounts for which the Directors are entitled to be indemnified in accordance with paragraph 20 of this Order.

**M-   Restructuring**

23.   **DECLARES** that, to facilitate the orderly restructuring of its business and financial affairs (the "**Restructuring**") but subject to such requirements as are imposed by the CCAA, the CCAA Parties shall have the right, subject to approval of the Monitor or further order of the Court, to:

(a)   permanently or temporarily cease, downsize or shut down any of its operations or locations as it deems appropriate and make provision for the consequences thereof in the Plan;

(b)   pursue all avenues to finance or refinance, market, convey, transfer, assign or in any other maner dispose of the Business or Property, in whole or part, subject to further order of the Court and sections 11.3 and 36 CCAA, and under reserve of subparagraph (c);

(c)   convey, transfer, assign, lease, or in any other manner dispose of the Property, outside of the ordinary course of business, in whole or in part, provided that the price in each case does not exceed $100,000 or $500,000 in the aggregate; (...)

- 10 -

    (d)    terminate the employment of such of its employees or temporarily or permanently lay off such of its employees as it deems appropriate and, to the extent any amounts in lieu of notice, termination or severance pay or other amounts in respect thereof are not paid in the ordinary course, make provision, on such terms as may be agreed upon between the CCAA Parties and such employee, or failing such agreement, make provision to deal with, any consequences thereof in the Plan, as the CCAA Parties may determine;

    (e)    subject to the provisions of section 32 CCAA, disclaim or resiliate, any of its agreements, contracts or arrangements of any nature whatsoever, with such disclaimers or resiliation to be on such terms as may be agreed between the CCAA Parties and the relevant party, or failing such agreement, to make provision for the consequences thereof in the Plan; and

    (f)    subject to section 11.3 CCAA, assign any rights and obligations of the CCAA Parties.

24.    **DECLARES** that, if a notice of disclaimer or resiliation is given to a landlord of the CCAA Parties pursuant to section 32 of the CCAA and subsection 22(d) of this Order, then (a) during the notice period prior to the effective time of the disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours by giving the CCAA Parties and the Monitor 24 hours prior written notice and (b) at the effective time of the disclaimer or resiliation, the landlord shall be entitled to take possession of any such leased premises and re-lease any such leased premises to third parties on such terms as any such landlord may determine without waiver of, or prejudice to, any claims or rights of the landlord against the CCAA Parties, provided nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

- 11 -

25.   **ORDERS** that the CCAA Parties shall provide to any relevant landlord notice of the CCAA Parties' intention to remove any fittings, fixtures, installations or leasehold improvements at least seven (7) days in advance. If the CCAA Parties have already vacated the leased premises, they shall not be considered to be in occupation of such location pending the resolution of any dispute between the CCAA Parties and the landlord.

26.   **DECLARES** that, in order to facilitate the Restructuring, the CCAA Parties may, subject to the approval of the Monitor, or further order of the Court, settle claims of customers and suppliers that are in dispute.

27.   **DECLARES** that, pursuant to sub-paragraph 7(3)(c) of the *Personal Information Protection and Electronic Documents Act*, S.C. 2000, c. 5, the CCAA Parties are permitted, in the course of these proceedings, to disclose personal information of identifiable individuals in their possession or control to stakeholders or prospective investors, financiers, buyers or strategic partners and to their advisers (individually, a "**Third Party**"), but only to the extent desirable or required to negotiate and complete the Restructuring or the preparation and implementation of the Plan or a transaction for that purpose, provided that the Persons to whom such personal information is disclosed enter into confidentiality agreements with the CCAA Parties binding them to maintain and protect the privacy of such information and to limit the use of such information to the extent necessary to complete the transaction or Restructuring then under negotiation. Upon the completion of the use of personal information for the limited purpose set out herein, the personal information shall be returned to the CCAA Parties or destroyed. In the event that a Third Party acquires personal information as part of the Restructuring or the preparation or implementation of the Plan or a transaction in furtherance thereof, such Third Party may continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the CCAA Parties.

- 12 -

N-    **Powers of the Monitor**

28.    **ORDERS** that KPMG Inc. (Mr. Dev A. Coossa) is hereby appointed to monitor the business and financial affairs of the CCAA Parties as an officer of this Court (the "**Monitor**") and that the Monitor, in addition to the prescribed powers and obligations, referred to in Section 23 of the CCAA:

    (a)    shall, without delay, (i) publish once a week for two (2) consecutive weeks or as otherwise directed by the Court, in *La Presse* and *The Gazette* and (ii) within five (5) business days after the date of this Order (A) post on the Monitor's website (the "**Website**") a notice containing the information prescribed under the CCAA, (B) make this Order publicly available in the manner prescribed under the CCAA, (C) send, in the prescribed manner, a notice to all known creditors having a claim against the CCAA Parties of more than $1,000, advising them that the Order is publicly available, and (D) prepare a list showing the names and addresses of such creditors and the estimated amounts of their respective claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder;

    (b)    shall monitor the CCAA Parties' receipts and disbursements;

    (c)    shall assist the CCAA Parties, to the extent required by the CCAA Parties, in dealing with its creditors and other interested Persons during the Stay Period;

    (d)    shall assist the CCAA Parties, to the extent required by the CCAA Parties, with the preparation of their cash flow projections and any other projections or reports and the development, negotiation and implementation of the Plan;

- 13 -

(e)     shall advise and assist the CCAA Parties, to the extent required by the CCAA Parties, to review the CCAA Parties' business and assess opportunities for cost reduction, revenue enhancement and operating efficiencies;

(f)     shall assist the CCAA Parties, to the extent required by the CCAA Parties, with the Restructuring and in their negotiations with their creditors and other interested Persons and with the holding and administering of any meetings held to consider the Plan;

(g)     shall report to the Court on the state of the business and financial affairs of the CCAA Parties or developments in these proceedings or any related proceedings within the time limits set forth in the CCAA and at such time as considered appropriate by the Monitor or as the Court may order;

(h)     shall report to this Court and interested parties, including but not limited to creditors affected by the Plan, with respect to the Monitor's assessment of, and recommendations with respect to, the Plan;

(i)     may retain and employ such agents, advisers and other assistants as are reasonably necessary for the purpose of carrying out the terms of the Order, including, without limitation, one or more entities related to or affiliated with the Monitor;

(j)     may engage legal counsel to the extent the Monitor considers necessary in connection with the exercise of its powers or the discharge of its obligations in these proceedings and any related proceeding, under the Order or under the CCAA;

(k)     may act as a "foreign representative" of the CCAA Parties or in any other similar capacity in any insolvency, bankruptcy or reorganisation

- 14 -

proceedings outside of Canada;

(l)    may give any consent or approval as may be contemplated by the Order
       or the CCAA, and

(m)    may perform such other duties as are required by the Order or the CCAA
       or by this Court from time to time.

29.    **ORDERS** that the CCAA Parties and their current and former shareholders, officers,
       Directors, agents and representatives shall fully cooperate with the Monitor in the
       exercise of its powers and discharge if its duties, rights and obligations as provided
       and set out in this Order.

30.    **ORDERS** that the CCAA Parties and their Directors, officers, employees and agents,
       accountants, auditors and all other Persons having notice of the Order shall forthwith
       provide the Monitor with unrestricted access to all of the Business and Property,
       including, without limitation, the premises, books, records, data, including data in
       electronic form, and all other documents of the CCAA Parties in connection with the
       Monitor's duties and responsibilities hereunder and in conformity with their duty to
       act in good faith as stated under Section 18.6 of the CCAA.

31.    **DECLARES** that the Monitor may provide creditors and other relevant stakeholders
       of the CCAA Parties with information in response to requests made by them in
       writing addressed to the Monitor and copied to the CCAA Parties' counsel. In the
       case of information that the Monitor has been advised by the CCAA Parties is
       confidential, proprietary or competitive, the Monitor shall not provide such
       information to any Person without the consent of the CCAA Parties unless otherwise
       directed by this Court.

32.    **DECLARES** that if the Monitor, in its capacity as Monitor, carries on the business of
       the CCAA Parties or continues the employment of the CCAA Parties' employees, the
       Monitor shall benefit from the provisions of section 11.8 of the CCAA.

- 15 -

33.   **DECLARES** that no action or other proceedings shall be commenced against the Monitor relating to its appointment, its conduct as Monitor or the carrying out the provisions of any order of this Court, except with prior leave of this Court, on at least seven days notice to the Monitor and its counsel. The entities related to or affiliated with the Monitor referred to in subparagraph 28(i) hereof shall also be entitled to the protection, benefits and privileges afforded to the Monitor pursuant to this paragraph.

34.   **ORDERS** that CCAA Parties shall pay the reasonable fees and disbursements of the Monitor, the Monitor's legal counsel, the CCAA Parties' legal counsel and other advisers, directly related to these proceedings, the Plan and the Restructuring, whether incurred before or after the Order, and shall provide each with a reasonable retainer in advance on account of such fees and disbursements, if so requested.

35.   **DECLARES** that the Monitor, the Monitor's legal counsel, if any, the CCAA Parties' legal counsel and the Monitor and the CCAA Parties' respective advisers (including for purpose of clarity KPMG Corporate Finance), whether Canadian or American, as security for the professional fees and disbursements incurred both before and after the making of the Order and directly related to these proceedings, the Plan and the Restructuring, be entitled to the benefit of and are hereby granted a charge and security in the Property to the extent of the aggregate amount of $500,000 (the "**Administration Charge**"), having the priority established by paragraphs 36 and 37 hereof.

**O-**   **Priorities and General Provisions Relating to the CCAA Charges**

36.   **DECLARES** that the priorities of the Administration Charge, and the D&O Charge (collectively, the "**CCAA Charges**"), as between them with respect to any Property to which they apply, shall be as follows:

     a.   first, the Administration Charge; and
     b.   second, the D&O Charge;

- 16 -

37.     **DECLARES** that each of the CCAA Charges shall rank in priority to any and all other hypothecs, mortgages, liens, security interests, priorities, charges, options, encumbrances or security of whatever nature or kind (collectively, the "**Encumbrances**") affecting the Property whether or not charged by such Encumbrances.

38.     **ORDERS** that, except as otherwise expressly provided for herein, the CCAA Parties shall not grant any Encumbrances in or against any Property that rank in priority to, or *pari passu* with, any of the CCAA Charges unless the CCAA Parties obtain the prior written consent of the Monitor and the prior approval of the Court.

39.     **DECLARES** that each of the CCAA Charges shall attach, as of the Effective Time, to all present and future Property of the CCAA Parties, notwithstanding any requirement for the consent of any party to any such charge or to comply with any condition precedent.

40.     **DECLARES** that the CCAA Charges and the rights and remedies of the beneficiaries of the CCAA Charges, as applicable, shall be valid and enforceable and shall not otherwise be limited or impaired in any way by: (i) these proceedings and the declaration of insolvency made herein; (ii) any petition for a receiving order filed pursuant to the BIA in respect of the CCAA Parties or any receiving order made pursuant to any such petition or any assignment in bankruptcy made or deemed to be made in respect of the CCAA Paties; or (iii) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any agreement, lease, sub-lease, offer to lease or other arrangement which binds the CCAA Parties (a "**Third Party Agreement**"), and notwithstanding any provision to the contrary in any Third Party Agreement:

      (a)     the creation of any of the CCAA Charges shall not create or be deemed to constitute a breach by the CCAA Parties of any Third Party Agreement to which it is a party; and

- 17 -

(b)    any of the beneficiaries of the CCAA Charges shall not have liability to any Person whatsoever as a result of any breach of any Third Party Agreement caused by or resulting from the creation of the CCAA Charges.

41.    **DECLARES** that notwithstanding: (i) these proceedings and any declaration of insolvency made herein, (ii) any petition for a receiving order filed pursuant to the BIA in respect of the CCAA Parties and any receiving order allowing such petition or any assignment in bankruptcy made or deemed to be made in respect of the CCAA Parties, and (iii) the provisions of any federal or provincial statute, the payments or disposition of Property made by the CCAA Parties pursuant to the Order and the granting of the CCAA Charges, do not and will not constitute settlements, fraudulent preferences, fraudulent conveyances or other challengeable or reviewable transactions or conduct meriting an oppression remedy under any applicable law.

42.    **DECLARES** that the CCAA Charges shall be valid and enforceable as against all Property of the CCAA Parties and against all Persons, including, without limitation, any trustee in bankruptcy, receiver, receiver and manager or interim receiver of the CCAA Parties, for all purposes.

P-    **General**

43.    **ORDERS** that no Person shall commence, proceed with or enforce any Proceedings against any of the Directors, employees, legal counsel or financial advisers of the CCAA Parties or the Monitor in relation to the Business or Property of the CCAA Parties, without first obtaining leave of this Court, upon five (5) days written notice to the CCAA Parties' counsel and to all those referred to in this paragraph whom it is proposed be named in such Proceedings;

44.    **ORDERS** that, subject to further Order of this Court, all motions in these CCAA proceedings are to be brought on not less than five (5) calendar days' notice to all

- 18 -

Persons on the service list. Each Motion shall specify a date (the "**Initial Hearing Date**") for the hearing;

45.    **ORDERS** that any Person wishing to object to the relief sought on a motion in these CCAA proceedings must serve responding motion materials or a notice stating the objection to the motion and the grounds for such objection (a "**Notice of Objection**") in writing to the moving party, the CCAA Parties and the Monitor, with a copy to all Persons on the service list, no later than 5 p.m. Montreal Time on the date that is three (3) calendar days prior to the Initial Hearing Date (the "**Objection Deadline**");

46.    **ORDERS** that, if no Notice of Objection is served by the Objection Deadline, the Judge having carriage of the motion (the "**Presiding Judge**") may determine: (a) whether a hearing is necessary; (b) whether such hearing will be in person, by telephone or by written submissions only; and (c) the parties from whom submissions are required (collectively, the "**Hearing Details**"). In the absence of any such determination, a hearing will be held in the ordinary course;

47.    **ORDERS** that, if no Notice of Objection is served by the Objection Deadline, the Monitor shall communicate with the Presiding Judge regarding whether a determination has been made by the Presiding Judge concerning the Hearing Details. The Monitor shall thereafter advise the service list of the Hearing Details and the Monitor shall report upon its disseminenation of the Hearing Details to the Court in a timely manner, which may be contained in the Monitor's next report in these proceedings;

48.    **ORDERS** that, if a Notice of Objection is served by the Objection Deadline, the interested parties shall appear before the Presiding Judge on the Initial Hearing Date, or such earlier or later time as may be directed by the Court, to, as the Court may direct: (a) proceed with the hearing on the Initial Hearing Date; or (b) establish a schedule for the delivery of materials and the hearing of the contested motion and such other matters, including interim relief, as the Court may direct;

- 19 -

49.    **DECLARES** that the Order and any proceeding or affidavit leading to the Order,
shall not, in and of themselves, constitute a default or failure to comply by the CCAA
Parties under any statute, regulation, licence, permit, contract, permission, covenant,
agreement, undertaking or other written document or requirement.

50.    **DECLARES** that, except as otherwise specified herein, the CCAA Parties and the
Monitor are at liberty to serve any notice, proof of claim form, proxy, circular or other
document in connection with these proceedings by forwarding copies by prepaid
ordinary mail, courier, personal delivery or electronic transmission to Persons or
other appropriate parties at their respective given addresses as last shown on the
records of the CCAA Parties and that any such service shall be deemed to be
received on the date of delivery if by personal delivery or electronic transmission, on
the following business day if delivered by courier, or three business days after
mailing if by ordinary mail.

51.    **DECLARES** that the CCAA Parties and any party to these proceedings may serve
any court materials in these proceedings on all represented parties electronically, by
emailing a PDF or other electronic copy of such materials to counsels' email
addresses, provided that the CCAA Parties shall deliver "hard copies" of such
materials upon request to any party as soon as practicable thereafter.

52.    **DECLARES** that, unless otherwise provided herein, under the CCAA, or ordered by
this Court, no document, order or other material need be served on any Person in
respect of these proceedings, unless such Person has served a Notice of
Appearance on the solicitors for the CCAA Parties and the Monitor and has filed
such notice with this Court, or appears on the service list prepared by the Monitor or
its attorneys, save and except when an order is sought against a Person not
previously involved in these proceedings;

53.    **DECLARES** that the CCAA Parties or the Monitor may, from time to time, apply to
this Court for directions concerning the exercise of their respective powers, duties

- 20 -

and rights hereunder or in respect of the proper execution of the Order on notice only to each other.

54.     **DECLARES** that any interested Person may apply to this Court to vary or rescind the Order or seek other relief upon five (5) days notice to the CCAA Parties, the Monitor and to any other party likely to be affected by the order sought or upon such other notice, if any, as this Court may order, such application or motion shall be filed during the Stay Period ordered by this Order, unless otherwise ordered by this Court;

55.     **DECLARES** that the Order and all other orders in these proceedings shall have full force and effect in all provinces and territories in Canada.

56.     **DECLARES** that the Monitor, with the prior consent of the CCAA Parties, shall be authorized to apply as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America or elsewhere, for orders which aid and complement the Order and any subsequent orders of this Court and, without limitation to the foregoing, an order under Chapter 15 of the *U.S. Bankruptcy Code*, for which the Monitor shall be the foreign representative of the CCAA Parties. All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to the Monitor as may be deemed necessary or appropriate for that purpose.

57.     **REQUESTS** the aid and recognition of any Court or administrative body in any Province of Canada and any Canadian federal court or administrative body and any federal or state court or administrative body in the United States of America and any court or administrative body elsewhere, to act in aid of and to be complementary to this Court in carrying out the terms of the Order.

- 21 -

58.  **ORDERS** the provisional execution of the Order notwithstanding any appeal.

59.  (...)

HON. MARIE-ANNE PAQUETTE, J.S.C.