## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 15 |
|  | ) |  |
|  | ) |  |
| MOTORCYCLE TIRES & ACCESSORIES | ) | Case No. 19-12706 (KBO) |
| LLC, *et al.*,[1] | ) | Joint Administration Requested |
|  | ) |  |
| Debtors in a Foreign Proceeding | ) |  |
|  | ) |  |

## MEMORANDUM OF LAW IN SUPPORT OF CHAPTER 15 PETITIONS FOR RECOGNITION OF A FOREIGN PROCEEDING AND RELATED RELIEF

**POTTER ANDERSON & CORROON LLP**
Jeremy W. Ryan (DE Bar No. 4057)
R. Stephen McNeill (DE Bar No. 5210)
D. Ryan Slaugh (DE Bar No. 6325)
Hercules Plaza, Sixth Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192

*Counsel to KPMG, Inc., as Foreign Representative for the Debtors*

Dated:  December 19, 2019
          Wilmington, Delaware

---

[1]     The Debtors in these chapter 15 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Motorcycle Tires & Accessories LLC (8629); Moncy Holding Company, Inc. (6755); Moncy Financial Services Company, Inc. (7515); Moncy LLC (3654); and Nichols Motorcycle Supply, Inc. (4371). The Debtors' mailing address is 1550 Melissa Court, Corona, CA 92879.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 3

ARGUMENT ............................................................................................................................ 3

I.    These Cases Are Proper Under Chapter 15 ...................................................................... 3

      a.    The Canadian Proceeding is a "foreign proceeding" .............................................. 3

      b.    The Foreign Representative is a Proper "foreign representative" .......................... 4

      c.    The Foreign Representative Filed Proper Documentation..................................... 5

      d.    The Petitions For Recognition Are Consistent With the Purpose of Chapter 15................................................................................................................................ 6

II.    The Canadian Proceeding Is a "Foreign Main Proceeding" Under the Bankruptcy Code .................................................................................................................................. 6

III.    Recognizing the Canadian Proceeding as a "Foreign Main Proceeding" is Consistent with the Purpose of Chapter 15 and Public Policy........................................... 8

IV.    The Provisional Relief Requested by the Foreign Representative is Within the Scope of Section 1519 of the Bankruptcy Code and Appropriate Under the Circumstances ............................................................................................................... 11

      A.    The Relief Requested is Authorized by Sections 1519(a)(3), 1521(a)(7), and 105(a) ............................................................................................................. 11

      B.    The Relief Requested is Necessary and Appropriate to Prevent Irreparable Harm .................................................................................................................... 12

            1.   There is a Substantial Likelihood of Foreign Recognition ............................ 13

            2.   The Debtors Will Suffer Irreparable Injury if the Provisional Order is Not Entered ................................................................................................ 14

            3.   There Will Be No Greater Harm to Others if the Relief is Granted ............... 15

            4.   Granting the Requested Relief is Consistent with U.S. Public Policy............ 15

CONCLUSION........................................................................................................................ 16

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

**Page(s)**

*ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*,
  84 F.3d 1471 (3d Cir. 1996)........................................................................................................13

*Clear Channel Outdoor, Inc. v. City of Los Angeles*,
  340 F.3d 810 (9th Cir. 2003) ......................................................................................................13

*Cornfeld v. Investors Overseas Servs., Ltd.*,
  471 F. Supp. 1255 (S.D.N.Y. 1979).............................................................................................9

*In re Angiotech Pharm., Inc.*,
  No. 11-10269 (Bankr. D. Del. Feb. 22, 2011) .............................................................................4

*In re Arctic Glacier Int'l Inc.*,
  No. 12-10605 (Bankr. D. Del. Mar. 16, 2012)........................................................................4, 12

*In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*,
  91 B.R. 661 (Bankr. S.D.N.Y. 1988)..........................................................................................14

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
  374 B.R. 122 (Bankr. S.D.N.Y. 2007), aff'd, 389 B.R. 325 (S.D.N.Y. 2008) ................5-7, 16

*In re Elpida Memory, Inc.*,
  No. 12-10947 (Bankr. D. Del. Mar. 21, 2012).............................................................................12

*In re Fraser Papers Inc.*,
  No. 09-12123 (Bankr. D. Del. July 13, 2009)..............................................................................4

*In re Grant Forest Prod. Inc.*,
  No. 10-11132 (Bankr. D. Del. Apr. 26, 2010) .............................................................................4

*In re Innua Canada Ltd.*,
  No. 09-16362, 2009 WL 1025088 (Bankr. D.N.J. Mar. 25, 2009)............................................12

*In re Ionosphere Clubs, Inc.*,
  922 F.2d 984 (2d Cir. 1990).........................................................................................................9

*In re Lines*,
  81 B.R. 267 (Bankr. S.D.N.Y 1988)..................................................................................... 13-14

*In re MAAX Corp.*,
  No. 08-11443 (Bankr. D. Del. August 5, 2008)...........................................................................4

ii

*In re Nortel Networks UK Ltd.*,
No. 09-11972 (Bankr. D. Del. Oct. 27, 2010) ........................................................................12

*In re SphinX, Ltd.*,
351 B.R. 103 (Bankr. S.D.N.Y. 2006), aff'd, 371 B.R. 10 (S.D.N.Y. 2007) .............6-7, 15-16

*In re W.C. Wood Corp., Ltd.*,
No. 09-11893 (Bankr. D. Del. June 18, 2009)..........................................................................4

*Kos Pharm., Inc. v. Andrx Corp.*,
369 F.3d 700 (3d Cir. 2004)..................................................................................................13

*Rogers v. Corbett*,
468 F.3d 188 (3d Cir. 2006)..................................................................................................13

*United States v. Bell*,
414 F.3d 474 (3d Cir. 2005)..................................................................................................12

*Victrix S.S. Co., S.A. v. Salen Dry Cargo, A.B.*,
825 F.2d 709 (2d Cir. 1987)..................................................................................................14

**STATUTES**

Page(s)

11 U.S.C. § 101(23) ............................................................................................................2-4

11 U.S.C. § 101(24) .........................................................................................................2, 4-5

11 U.S.C. § 105(a) .............................................................................................................1, 11

11 U.S.C. § 108..................................................................................................................12

11 U.S.C. § 304(c) ...............................................................................................................8

11 U.S.C. § 362...............................................................................................................11-13

11 U.S.C. § 365(e) .............................................................................................................12

11 U.S.C. §§ 701-784 ...........................................................................................................9

11 U.S.C. §§ 1101-1195 .......................................................................................................9

11 U.S.C. § 1501...........................................................................................................15-16

11 U.S.C. § 1501(a)(1)-(5)..................................................................................................15

11 U.S.C. § 1501(a)(3)..........................................................................................................6

iii

11 U.S.C. § 1501(a) ..................................................................................................6, 10

11 U.S.C. § 1501(b)(1) ...................................................................................................3

11 U.S.C. § 1502 ..............................................................................................................8

11 U.S.C. § 1502(4) ..................................................................................................2, 6-7

11 U.S.C. § 1504 ..............................................................................................................5

11 U.S.C. § 1506 ..............................................................................................................8

11 U.S.C. § 1509 ..............................................................................................................5

11 U.S.C. § 1515 ......................................................................................................2, 5, 8

11 U.S.C. § 1515(a) ........................................................................................................5

11 U.S.C. § 1515(b) ......................................................................................................4-5

11 U.S.C. § 1515(c) ........................................................................................................5

11 U.S.C. § 1517 .........................................................................................................1, 8

11 U.S.C. § 1517(a) ........................................................................................................8

11 U.S.C. § 1519 .................................................................................................. 1, 11-13

11 U.S.C. § 1519(a)(3) ............................................................................................. 11-12

11 U.S.C. § 1519(e) .......................................................................................................13

11 U.S.C. § 1520 ......................................................................................................... 1-2

11 U.S.C. § 1521 ......................................................................................................... 1-2

11 U.S.C. § 1521(a)(7) ............................................................................................. 11-12

11 U.S.C. § 1525 ...........................................................................................................16

## OTHER AUTHORITIES

**Page(s)**

Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 ......................................1

H.R. Rep 109-31 (2005), *reprinted in* 2005 U.S.C.C.A.N 88 ........................................8

KPMG, Inc., ("KPMG" or the "Foreign Representative"), in its capacity as the court-appointed monitor and authorized foreign representative of Motorcycle Tires & Accessories LLC ("MTA") and certain of its wholly-owned subsidiaries (collectively, the "Debtors"), in Canadian proceedings (the "Canadian Proceeding") commenced under the under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended (the "CCAA"), pending before the Superior Court in Commercial Division in the in the District of Montreal (the "Canadian Court").  On the date hereof, the Foreign Representative commenced these chapter 15 cases (the "Chapter 15 Cases") and filed verified petitions (the "Chapter 15 Petitions") and the *Foreign Representative's Motion for Provisional and Final Relief in Recognition of a Foreign Main Proceeding Pursuant to Sections 105(a), 1519, 1520, and 1521 of the Bankruptcy Code* (together, the "Petitions for Recognition"), seeking recognition of the Canadian Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code and other related relief.  The Foreign Representative respectfully submits this Memorandum of Law in support of the Petitions for Recognition.

## PRELIMINARY STATEMENT

The Foreign Representative is authorized by the Debtors and approved by the Canadian Court to, among other things, assist the Debtors in these proceedings, report to the Canadian Court, and take such actions as may be necessary or appropriate in furtherance of the recognition of the Canadian Proceeding.  In furtherance of its duties, the Foreign Representative seeks (a) entry of the Provisional Order granting certain provisional relief to preserve the Debtors' assets in the United States pending a final hearing on the Petitions for Recognition, and (b) entry of the Final Order, after notice and a hearing, granting recognition of the Canadian Proceeding as a foreign main proceeding and granting relief similar to that granted by the Provisional Order on a final basis.  Absent the relief requested, the Canadian Proceeding could be undermined, the

Debtors' restructuring efforts could be jeopardized, and the Debtors, their creditors, and other parties in interest could suffer irreparable harm.

The ultimate purpose of the Canadian Proceeding is to restructure the Debtors' debt obligations for the long-term benefit of their creditors and stakeholders. The Foreign Representative believes that granting the additional relief sought herein will best assure the fair and efficient administration of the Canadian Proceeding and maximize the value of the Debtors' business for the benefit of creditors, all of which is consistent with the principles set forth in chapter 15 of the Bankruptcy Code and the public policy of the United States of America.

Chapter 15 of the Bankruptcy Code authorizes this Court to: (i) recognize a foreign proceeding, as defined under section 101(23) of the Bankruptcy Code, upon the proper commencement of a case under chapter 15 by a foreign representative, as defined under section 101(24) of the Bankruptcy Code; and (ii) grant assistance in the United States to such foreign representative in connection with the foreign proceeding, including by granting injunctive relief pursuant to sections 1520 and 1521 of the Bankruptcy Code.

The Petitions for Recognition satisfy all of the requirements set forth in section 1515 of the Bankruptcy Code. Moreover, the relief requested therein is necessary and appropriate under chapter 15 of the Bankruptcy Code. Granting recognition of the Canadian Proceeding and the relief requested is consistent with the goals of international cooperation and assistance to foreign courts embodied in chapter 15 of the Bankruptcy Code.

Specifically, this Court should recognize the Canadian Proceeding as a "foreign main proceeding," as defined in section 1502(4) of the Bankruptcy Code, because Quebec, Canada is the Debtors' "center of main interests," and recognition of the Canadian Proceeding as a "foreign main proceeding" is consistent with the purposes and policy of chapter 15.

2

## FACTUAL BACKGROUND

The Court is respectfully referred to the *Declaration of Maxime Codère in Support of Foreign Representative's (I) Verified Petitions under Chapter 15, (II) Motion for Joint Administration, (III) Motion for Provisional and Final Relief in Recognition of a Foreign Main Proceeding, (IV) Motion to Establish Certain Notice Procedures in Connection with Filing of Verified Petitions under Chapter 15 and (V) Motion to Assume Agency Agreement* (the "Codère Declaration")[2] which contains the relevant facts, all of which are incorporated herein by reference.

## ARGUMENT

### I.      These Cases Are Proper Under Chapter 15

Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks the assistance of the United States Bankruptcy Court in connection with a foreign proceeding. *See* 11 U.S.C. § 1501(b)(1). These cases are proper under chapter 15 because (a) they concern a "foreign proceeding," (b) they were commenced by a duly authorized "foreign representative," (c) the Petitions for Recognition, and all required supporting documentation, were properly filed, and (d) the purpose of the Petitions for Recognition is consistent with the objectives of chapter 15.

#### a.      The Canadian Proceeding is a "foreign proceeding."

The Canadian Proceeding is a "foreign proceeding." Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

---

[2]      Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Codère Declaration.

11 U.S.C. § 101(23).  The Canadian Proceeding fits squarely within the Bankruptcy Code's definition of a "foreign proceeding," as it is an insolvency action brought under the CCAA procedure designed to enable financially distressed companies to avoid foreclosure or seizure of assets while maximizing going concern value for the benefit of creditors and other parties in interest. *See, e.g., In re Arctic Glacier Int'l Inc.*, No. 12-10605 (Bankr. D. Del. Mar. 16, 2012) (order granting recognition of CCAA proceeding as a "foreign proceeding"); *In re Angiotech Pharm., Inc.*, No. 11-10269 (Bankr. D. Del. Feb. 22, 2011) (granting recognition of CCAA proceeding as a "foreign proceeding"); *In re Grant Forest Prod. Inc.*, No. 10-11132 (Bankr. D. Del. Apr. 26, 2010) (granting recognition of CCAA proceeding as a "foreign proceeding"); *In re Fraser Papers Inc.*, No. 09-12123 (Bankr. D. Del. July 13, 2009) (granting recognition of CCAA proceeding as a "foreign proceeding"); *In re W.C. Wood Corp., Ltd.*, No. 09-11893 (Bankr. D. Del. June 18, 2009) (granting recognition of CCAA proceeding as a "foreign proceeding"); *In re MAAX Corp.*, No. 08-11443 (Bankr. D. Del. August 5, 2008) (granting recognition of CCAA proceeding as a "foreign proceeding").  Pursuant to the CCAA, the Debtors have obtained from the Canadian Court the CCAA Order, a certified copy of which is attached to the *Declaration of Maxime Codère in Support of Chapter 15 Petitions for Recognition of a Foreign Proceeding Pursuant to Section 1515(b) of the Bankruptcy Code* as Exhibit A.

### b.     The Foreign Representative is a Proper "foreign representative."

These Chapter 15 Cases were commenced by the duly appointed and authorized "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code. That section provides as follows:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis,

> authorized in a foreign proceeding to administer the reorganization
> or the liquidation of the debtor's assets or affairs or to act as a
> representative of such foreign proceeding.

11 U.S.C. § 101(24). The CCAA Order expressly authorizes the Foreign Representative to act as a foreign representative. *See* CCAA Order ¶ 56 (specifically authorizing the Foreign Representative to act as foreign representative and to commence these chapter 15 proceedings).

### c.    The Foreign Representative Filed Proper Documentation.

These Chapter 15 Cases were duly and properly commenced as required by sections 1504 and 1509 of the Bankruptcy Code by filing petitions for recognition of a foreign proceeding under section 1515(a) of the Bankruptcy Code, accompanied by all documents and information required by sections 1515(b) and (c). *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,* 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code."), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008). Because the Petitions for Recognition satisfy the requirements set forth in section 1515 of the Bankruptcy Code, these Chapter 15 Cases have been properly commenced by the Foreign Representative.

### d.    The Petitions For Recognition Are Consistent With the Purpose of Chapter 15.

One of the objectives of chapter 15 is the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a)(3). These Chapter 15 Cases have been commenced for the purpose of obtaining the assistance of this Court to ensure the effective and economical administration of the Canadian Proceeding by, *inter alia,* restricting the Debtors' creditors from

taking certain actions in the United States that would undermine the unified, collective and equitable resolution of the Debtors' liabilities in the Canadian Proceeding before the Canadian Court. Fostering such cooperation among the Canadian Proceeding and this Court is precisely the goal that chapter 15 is intended to promote. *See id.* § 1501(a) (instructing that the purpose of chapter 15 is to promote cooperation among courts to ensure the "fair and efficient administration of cross-border insolvencies").

## II.    The Canadian Proceeding Is a "Foreign Main Proceeding" Under the Bankruptcy Code

This Court should recognize the Canadian Proceeding as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code. The Bankruptcy Code provides that a foreign proceeding is a "foreign main proceeding" if it is pending in the country where the debtor has its center of its main interests. *See id.* § 1517(b)(1). While the Bankruptcy Code does not define "center of main interests," it does provide that absent evidence to the contrary, the debtor's registered office is presumed to be the center of the debtor's main interests. *Id.* § 1516(c); *see Bear Stearns*, 374 B.R. at 130 (noting that the presumption that a debtor's center of main interests is the place of its registered office may be "rebutted by evidence to the contrary"). Additionally, in *Bear Stearns,* Judge Lifland suggested that:

> [v]arious factors could be relevant to such a determination, including: the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.

*Bear Stearns*, 374 B.R. at 128 (citing *In re SphinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007)).

The foregoing demonstrates that the Debtors' "center of main interest" is in Canada. The

6

Debtors' principal corporate, management and strategic functions are undertaken in Canada. Specifically, (1) Motovan, the Canadian Parent, is the ultimate sole shareholder of the U.S. Subsidiaries; (2) the Debtors' corporate headquarters are located in Montreal; (3) the key management personnel of the Debtors are located in Canada; (5) the Debtors' primary indebtedness consists of secured debt held by the Secured Creditors, all of whom are located in Canada; (6) a majority of the Debtors' creditors are located in Canada; (7) the Debtors' consolidated financial statements are audited in Canada; and (8) the principal books and records of each of the Debtors are located in the Montreal.  Importantly, the principal corporate management and strategic functions are undertaken in Canada and the Debtors' Canadian and United States operations are integrated and function in a coordinated way such that the U.S. Subsidiaries would be unable to operate or function independently.

Thus, Montreal, Quebec, Canada should be found to be the center of the Debtors' main interests.  *See SphinX, Ltd.*, 351 B.R. at 117 (noting that a debtor's center of main interests is presumed to be the country in which it is registered).  In this instance, the facts presented by the Foreign Representative support a finding that the Debtors' center of main interests is in Canada.

Indeed, as described above, Canada is "ascertainable by third parties" as the Debtors' center of main interests.  *See Bear Stearns,* 374 B.R. at 129 (noting that the debtors' center of main interests was the United States where the debtors "conduct the administration of [their] interests on a regular basis and is therefore ascertainable by third parties").  Accordingly, given that the Canadian Proceeding is pending in Canada, which is the Debtors' center of main interests, the Canadian Proceeding should be recognized as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code.

An order recognizing a foreign proceeding shall be entered if all of the requirements for

7

recognition have been met. *See* 11 U.S.C. § 1517. As set forth above, the Canadian Proceeding is a "foreign main proceeding" within the meaning of section 1502 of the Bankruptcy Code, the Foreign Representative qualifies as a "foreign representative," and the Petitions for Recognition meet the requirements of Bankruptcy Code section 1515. Accordingly, under section 1517(a) of the Bankruptcy Code, the Court should enter an order granting recognition to the Canadian Proceeding. *See id.* (an order recognizing a foreign proceeding "shall be entered" if all of the requirements for recognition have been met). As the legislative history of chapter 15 makes clear:

> The decision to grant recognition is not dependent upon any findings about the nature of the foreign proceeding of the sort previously mandated by section 304(c) of the Bankruptcy Code. The requirements of this section [1517], which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition.

H.R. Rep 109-31, at 113 (2005), *reprinted in* 2005 U.S.C.C.A.N 88, 175. Thus, recognition under section 1517(a) of the Bankruptcy Code is mandatory where, as here, the Petitions for Recognition meet the statutory requirements.

## III.   Recognizing the Canadian Proceeding as a "Foreign Main Proceeding" is Consistent with the Purpose of Chapter 15 and Public Policy

Recognition of the Canadian Proceeding as a "foreign main proceeding" is also consistent with the provisions of section 1506 of the Bankruptcy Code. That section provides that nothing in chapter 15 shall prevent a court from refusing to take an action otherwise required by chapter 15 if such action would be manifestly contrary to the public policy of the United States. 11 U.S.C. § 1506. The relief requested by the Foreign Representative is not manifestly contrary to, but rather consistent with, United States public policy.

It is well established that one of the fundamental goals of the Bankruptcy Code is the

8

centralization of disputes involving the debtor.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code 'provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court . . .'"). Indeed, as one court has noted, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction." *Cornfeld v. Investors Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (recognizing that Canadian liquidation proceeding would not violate laws or public policy of New York or the United States).  The Canadian Proceeding is similar to cases under chapters 7 and 11 of the Bankruptcy Code in that they provide for a centralized process to (i) assert and resolve claims against an estate, and (ii) ultimately will result in distributions to creditors. Recognizing the Canadian Proceeding and enjoining certain actions or proceedings against the Debtors and their assets will assist the orderly administration of the Debtors.  Such orderly administration is demonstrably consistent with the public policy of the United States.  Absent the relief requested, there is a risk that the assets of the Debtors in the United States would be subject to attachments or executions brought by individual creditors, which would result in a piecemeal disposition of assets that would undermine the Canadian Proceeding and prevent the equal treatment of similarly situated creditors that the Bankruptcy Code seeks to promote.

Further, recognition of the Canadian Proceeding would be consistent with the purpose of chapter 15 and its predicate, the UNCITRAL Model Law on Cross Border Insolvency.  Section 1501(a) of the Bankruptcy Code provides, in pertinent part that:

> The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of–
>
> > ( 1 )    cooperation between–

9

\* \* \*

        (B)    the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;

\* \* \*

        (3)    fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;

        (4)    protection and maximization of the value of the debtor's assets.

11 U.S.C. § 1501(a).

The relief requested by the Foreign Representative is consistent with, and critical to effectuate, the objectives of chapter 15 for several reasons. First, recognition of the Canadian Proceeding would foster cooperation between the Canadian and United States insolvency and debt-adjustment regimes. By granting recognition of the Canadian Proceeding and granting injunctive relief, this Court can effectively assist the Canadian Proceeding in the orderly administration of the Debtors. The Debtors' creditors would generally be enjoined by this Court from commencing or continuing actions against the Debtors, thereby assisting in the uniform resolution of claims against the Debtors.

Second, recognition of the Canadian Proceeding would promote the fair and efficient administration of a cross-border debt-adjustment procedure that protects the interests of all creditors and interested entities. By recognizing the Canadian Proceeding and granting the injunctive relief requested, the process of resolving claims against the Debtors would be centralized in Canada. Creditors would be required to assert their claims in accordance with Canadian law in the Canadian Proceeding and any disputes would be subject to the uniform jurisdiction of one tribunal, the Canadian Court. If the Debtors' U.S. creditors are not effectively stayed, the uniform and orderly voluntary administration of the Debtors in the Canadian Proceeding will be jeopardized.

IMPAC 6514704v.4

Finally, the relief requested would protect the Debtors' assets. Absent such relief, the Debtors' assets may be depleted and available resources may be expended unnecessarily to defend collection and other actions brought in the United States. Accordingly, the relief requested would further the objectives of chapter 15 by assisting the orderly voluntary administration of the Debtors in the Canadian Proceeding.

**IV.    The Provisional Relief Requested by the Foreign Representative is Within the Scope of Section 1519 of the Bankruptcy Code and Appropriate Under the Circumstances.**

Pursuant to the Recognition Motion, the Foreign Representative also seeks entry of an order making section 362 of the Bankruptcy Code applicable in these ancillary cases on a provisional basis pending entry of the Final Order pursuant to sections 1519(a)(3), 1521(a)(7), and 105(a) of the Bankruptcy Code. As noted, the Foreign Representative believes that application of the automatic stay in these cases is crucial to prevent irreparable injury to the value of the Debtors' assets by not subjecting them to diminution in value resulting from the collection or enforcement efforts of creditors prior to the disposition of the Petitions for Recognition.

**A. The Relief Requested is Authorized by Sections 1519(a)(3), 1521(a)(7), and 105(a).**

Section 1519(a)(3) of the Bankruptcy Code authorizes the Court to grant, on a provisional basis, any relief available pursuant to section 1521(a)(7). Section 1521(a)(7) provides that the Court may grant any relief available to a trustee, subject to certain exceptions not relevant here. The automatic stay of section 362 is an essential feature of the Bankruptcy Code. Although not automatic upon filing, the Court has discretion to grant section 362 relief on a provisional basis pursuant to sections 1519(a)(3) and 1521(a)(7) of the Bankruptcy Code. In addition, section 105(a) of the Bankruptcy Code further allows the Court to "issue any order . . . necessary or

appropriate to carry out the provisions of [title 11 ]."

The provisional application of section 362 of the Bankruptcy Code, among others, has been approved in several cases, both within and outside of this jurisdiction. *See, e.g., In re Elpida Memory, Inc.*, No. 12-10947 (Bankr. D. Del. Mar. 21, 2012) (applying section 362 of the Bankruptcy Code on a provisional basis to the actions of all creditors against the debtors and their property located within the United States, pursuant to section 1519 of the Bankruptcy Code); *In re Arctic Glacier Int'l Inc.*, No. 12-10605 (Bankr. D. Del. Feb. 23, 2012) (granting provisional relief, through sections 1519 and 1521 of the Bankruptcy Code, sections 108, 362, and 365(e)); (granting provisional relief, including protections of automatic stay); *In re Nortel Networks UK Ltd.*, No. 09-11972 (Bankr. D. Del. Oct. 27, 2010) (granting provisional relief, including protections of automatic stay); *In re Innua Canada Ltd.*, No. 09-16362 (Bankr. D.N.J. Mar 25, 2009) (granting provisional relief, including protections of automatic stay). As further set forth below, provisional application of section 362 of the Bankruptcy Code is appropriate here, and in the best interests of the Debtors and their creditors.

### B. The Relief Requested is Necessary and Appropriate to Prevent Irreparable Harm.

Relief pursuant to section 1519 of the Bankruptcy Code is available where the foreign representative can satisfy the standard for injunctive relief. 11 U.S.C. § 1519(e); *In re Innua Canada Ltd.*, No. 09-16362, 2009 WL 1025088, at *3 (Bankr. D.N.J. Mar. 25, 2009). In the Third Circuit, the factors considered for injunctive relief include "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *United States v. Bell*, 414 F.3d 474, 478 n.4 (3d Cir. 2005) (citing

12

*ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 n. 2 (3d Cir. 1996)).

*See also Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006) (citations omitted); *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted).

The greater the relative hardship to the party seeking the preliminary injunction, the less probability of success must be shown. *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). In the cross-border restructuring context, courts have consistently recognized that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury." *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y 1988). The Foreign Representative submits that this standard is satisfied here and that it is therefore entitled to the requested provisional relief pursuant to section 1519 of the Bankruptcy Code, including the entry of the Provisional Order.

      1.   **There is a Substantial Likelihood of Foreign Recognition.**

As set forth above, the Foreign Representative has provided a solid basis for recognition of the Canadian Proceeding, and has thereby more than demonstrated a reasonable probability that such proceeding will be recognized as a foreign main proceeding. Based on the facts that (a) the Canadian Proceeding is pending in Canada, which is the location of the Debtors' center of main interests, (b) all proper supporting documentation was filed contemporaneously with the Petitions for Recognition, and (c) these cases were properly commenced by a duly appointed foreign representative, there is a high likelihood that recognition of the CCAA Proceeding as a foreign main proceeding will be granted.

      2.   **The Debtors Will Suffer Irreparable Injury if the Provisional Order is Not Entered.**

The Foreign Representative believes that application of provisional relief pursuant to section 362 of the Bankruptcy Code in these cases is critical to the prevention of irreparable

IMPAC 6514704v.4

damage to the Debtors' reorganization proceeding in Canada. These cases were commenced for the purpose of obtaining the assistance of the Court in respect of the Canadian Proceeding and to give effect in the United States to the CCAA Order. Unless the Provisional Order is entered, the Debtors face the possibility of immediate and irreparable harm from potential actions being brought against the U.S. Subsidiaries in the United States to recover from the assets of the U.S. Subsidiaries. This type of decentralized administration of the Debtors' assets could be extremely prejudicial to the Debtors' reorganization process, and could serve to hinder the Canadian Proceeding.

With respect to the potential for collection activity on a piecemeal basis, a number of courts have recognized the need for provisional relief to prevent individual creditors from taking extrajudicial advantage of the recognition process. *See Victrix S.S. Co., S.A. v. Salen Dry Cargo, A.B.*, 825 F.2d 709, 713-14 (2d Cir. 1987) (harm to an estate exists where the orderly determination of claims and the fair distribution of assets are disrupted); *In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*, 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988) (stating that injunctive relief is necessary "to prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group"); *In re Lines*, 81 B.R. at 270 (stating that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury").

If all creditors are not enjoined, the assets of the Debtors located in the United States may be prematurely seized and the orderly determination of claims in the foreign proceeding will be rendered impossible. If creditors unilaterally pursue collection or enforcement efforts, or application of setoff, it could diminish the value of the Debtors' assets and cause significant delay and disruption to the Debtors' restructuring process. The purpose of chapter 15 is to

14

prevent such harm. *See* 11 U.S.C. § 1501.

Accordingly, the Foreign Representative respectfully requests that, pending the hearing on the Final Order, the Provisional Order be approved in all respects and that the terms and provisions of the Provisional Order be implemented and that, after the Final Hearing, the Final Order be approved in all respects and the terms and provision of the Final Order be implemented.

### 3. There Will Be No Greater Harm to Others if the Relief is Granted.

In contrast to the hardships described above, preservation of the *status quo* through imposition of the automatic stay while the Foreign Representative and the Debtors undertake the reorganization process in the Canadian Proceeding will not prejudice creditors. The relief requested in the Recognition Motion is intended to be temporary, extending only through the disposition of the Petitions for Recognition. If recognition of the Canadian Proceeding is granted, the same relief being requested on a provisional basis would come into effect automatically. Accordingly, the balance of the hardships tips decidedly in favor of the Debtors, as there will be negligible, if any, harm to others if the relief is granted.

### 4. Granting the Requested Relief is Consistent with U.S. Public Policy.

Granting the provisional relief requested in the Recognition Motion will help advance the purpose of chapter 15, "to provide effective mechanisms for dealing with cases of cross-border insolvency," with the express objectives of cooperation between United States courts, trustees, examiners, debtors, the courts, and other competent authorities of foreign countries; greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the debtor; the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled businesses. 11 U.S.C. § 1501(a)(1)-(5). *See In re SPhinX, Ltd.*, 351 B.R.

15

103, 112 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007); *In re Bear Stearns*, 374 B.R. at 126.  If the provisional relief sought is not granted, the Debtors will be exposed to the risks detailed above, including potential enforcement actions by creditors in the United States. Such actions on the part of creditors would violate the stay provisions of the CCAA Order and thereby interfere with the orderly administration of the Canadian Proceeding, which is exactly the type of harm chapter 15 is intended to prevent. *See* 11 U.S.C. § 1501.

In addition, and as set forth above with respect to final recognition of the Canadian Proceeding, the provisional relief promotes cooperation between foreign jurisdictions and comity among tribunals.  By the CCAA Order, the Canadian Court has requested the assistance of the Court to effectuate its orders in the United States. *See* CCAA Order ¶ 56.  Accordingly, providing the requested assistance would effectuate the public policy considerations underpinning section 1525 of the Bankruptcy Code which mandates cooperation "to the maximum extent possible" between the Court and a foreign court. *See* 11 U.S.C. § 1525.

## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests that this Court grant the relief requested in the Petitions for Recognition, and such other and further relief as may be just and proper.

IMPAC 6514704v.4

Dated:  December 19, 2019
    Wilmington, Delaware

**POTTER ANDERSON & CORROON LLP**

*R. Stephen McNeill*
Jeremy W. Ryan (DE Bar No. 4057)
R. Stephen McNeill (DE Bar No. 5210)
D. Ryan Slaugh (DE Bar No. 6325)
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192
E-mail:  jryan@potteranderson.com
      rmcneill@potteranderson.com
      rslaugh@potteranderson.com

*Counsel to KPMG, Inc., as Foreign*
*Representative for the Debtors*

17